Robert N. H. Christmas, Esq.
Christopher J. Fong, Esq.
NIXON PEABODY LLP
55 West 46th Street
New York, New York 10036
Telephone: (212) 940-3000

*Counsel for John Sheahan as Liquidator of*
  *B.C.I. Finances Pty Limited (In Liquidation)*
  *Binqld Finances Pty Limited (In Liquidation)*
  *E.G.L. Development (Canberra) Pty Limited (In Liquidation)*
  *Ligon 268 Pty Limited (In Liquidation)*
  *Gerobin Finances Pty Ltd (In Liquidation)*
  *Erbin Finances Pty Ltd (In Liquidation)*
  *Rawbin Finances Pty Ltd (In Liquidation)*
  *Marbin Finances Pty Ltd (In Liquidation)*
  *Erma Nominees Pty Ltd (In Liquidation)* and
  *Ligon 158 Pty Ltd (In Liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                :
                                                :   Chapter 15
In re:                                          :
                                                :   Case No. 21-11699   (    )
GEROBIN FINANCES PTY LIMITED (In Liquidation),  :
                                                :   Joint Administration pending with
                  Debtor in a Foreign Proceeding.   :   Case No. 17-11266 (SHL)
                                                :
                                                :
------------------------------------------------------------------------x

## DECLARATION OF JOHN SHEAHAN
## IN SUPPORT OF VERIFIED PETITION

JOHN SHEAHAN, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as

follows:

1.    In my capacity as liquidator ("Liquidator" or "Petitioner") and as duly authorised

foreign representative of Gerobin Finances Pty Limited (In Liquidation) ("Gerobin" or the

"Debtor"), I hereby submit this Declaration in support of the *Petition under Chapter 15 for*

*recognition of a foreign main proceeding* (the "Verified Petition") filed contemporaneously herewith, seeking this Court's recognition of the Debtor's Australian liquidation proceeding as a "foreign main proceeding" as that term is defined pursuant to section 1502(4) of the Bankruptcy Code.

2.      This Declaration, one of six that have material textual parallels, is being filed with the Court contemporaneously with the respective Petitions under Chapter 15 of the following debtors, for which I have been appointed as Liquidator in their respective Australian liquidation proceedings:

  a.   Gerobin Finances Pty Ltd (In Liquidation)

  b.   Erbin Finances Pty Ltd (In Liquidation)

  c.   Rawbin Finances Pty Ltd (In Liquidation)

  d.   Marbin Finances Pty Ltd (In Liquidation)

  e.   Erma Nominees Pty Ltd (In Liquidation) and

  f.   Ligon 158 Pty Ltd (In Liquidation).

3.      On February 5, 2019, Mr. Ian Lock and I, both of Sheahan Lock Partners ("Sheahan Lock"), were appointed as joint and several liquidators of Gerobin in a court-ordered winding up by order of the Supreme Court of New South Wales pursuant to section 472(1) of the *Corporations Act 2001* (Cth) (the "Corporations Act"), an Act of the Federal Parliament of Australia. A copy of the order of the Court dated February 5, 2019 is attached to the Verified Petition as Annexure A. A copy of the document filed with the Australian Securities and Investments Commission ("ASIC") on February 5, 2019 evidencing that appointment is attached to the Verified Petition as Annexure B. Mr. Lock and I were previously appointed as liquidators of the Debtor in a voluntary

winding up by a resolution of the sole member of the Debtor on October 9, 2018.[1] A copy of the

resolution of the member of the Debtor is attached to the Verified Petition as <u>Annexure C</u>.

4.    I have been advised by my Australian legal counsel and solicitors, Clayton Utz, that

the Supreme Court of New South Wales and the Federal Court of Australia (the "<u>Australian</u>

<u>Courts</u>") are the judicial bodies in Australia that have the supervisory authority over the Debtor's

liquidation proceeding in Australia.

5.    Effective June 30, 2021, Mr. Lock resigned as liquidator of the Debtor.  A copy of

orders made in the Federal Court of Australia on June 4, 2021 confirming Mr. Lock's resignation

as liquidator of the Debtor is attached to the Verified Petition as <u>Annexure D</u>.  As a consequence

of Mr. Lock's resignation, I am now the sole liquidator of the Debtor.

6.    I am authorised to make this Declaration acting in my capacity as the liquidator of

the Debtor.  Where matters stated in this Declaration are statements of fact that are within my

personal knowledge, they are true.  Where the matters stated in this Declaration are statements of

fact that are not within my personal knowledge, they are derived from documents and/or

information supplied to me and are true to the best of my knowledge, information and belief.

## **BACKGROUND**

7.    I am a Fellow of Chartered Accountants Australia and New Zealand.

8.    I am a registered liquidator, having met the qualifications for registration with ASIC

pursuant to section 20-1 of the Insolvency Practice Rules (Corporations) 2016 (which was in force

when my registration as a liquidator was most recently renewed).  I have been in practice as a

registered liquidator for over 30 years.  A copy of my certificate of registration is attached hereto

---

[1] The resolution was passed in New York on October 8, 2018. The liquidation has at all times been
treated in Australia as having commenced on the following day, Australian time.

as <u>Exhibit A</u>.  The required qualifications in force when my registration as a liquidator was most recently renewed include, non-exhaustively:

      a.  a three year course of study in accountancy and commercial law;

      b.  further study in the practice of external administrations;

      c.  at least 4,000 hours within the last five years engagement in corporate insolvency and winding up bodies corporate; and

      d.  demonstration to the satisfaction of ASIC of the capacity to perform the functions and duties of a liquidator.

**A.     The Debtor**

9.     The Debtor was registered as a company on November 16, 2009 under Chapter 2A of the Corporations Act. The Debtor is identified by its Australian Company Number 140 586 410. The Debtor's registered office with ASIC is situated at my offices at Level 8, 26 Flinders Street, Adelaide, South Australia, Australia.

10.     A copy of the Debtor's Certificate of Registration with ASIC is attached to the Verified Petition as <u>Annexure E</u>.

11.     The Debtor operated as an intercompany borrowing and lending entity within a remarkably complex group of companies controlled and operated by, and used for the personal benefit of, the Binetter family, many of which companies have been the subject of a far-ranging tax investigation by the Australian Taxation Office. The results of that investigation, as discussed in more detail below, have culminated in multiple legal proceedings against, among other parties,

- 4 -

certain banks and members of the Binetter family personally, in connection with an international

tax avoidance scheme involving the Debtor and other family companies going back 25 years.

12.    The Debtor has one issued ordinary share which, according to ASIC's records, is

held by Andrew Binetter.

**B.    The Australian liquidation proceeding**

13.    Since my appointment as liquidator of the Debtor, I (and, prior to his resignation,

Mr. Lock and I) have administered the property and affairs of the Debtor for the benefit of its

creditors. This has involved, amongst other things:

      a. identifying and notifying creditors of the Debtor of the appointment of
liquidators;

      b. calling meetings of creditors of the Debtor;

      c. interacting with the Debtor's director and its former legal advisors to obtain
the Debtor's books, records and legal files;

      d. investigating offences and causes of action that may be able to be pursued
by me for the benefit of creditors of the Debtor;

      e. in conjunction with my Australian legal advisors, identifying, formulating
and prosecuting such causes of action; and

      f. undertaking various legal tasks in connection with the legal proceedings
referred to above.

14.    Mr. Lock and I have prosecuted one such cause of action for the benefit of creditors of the Debtor. Details of that litigation are set out below.

15.    A prime function of my role as Liquidator is to realise all property of the Debtor, which in the circumstances is limited to the proceeds of successfully prosecuted legal claims, and to distribute that property amongst the creditors of the Debtor.

16.    I also refer to the Declaration of Tobin Philip Meagher (the "Meagher Declaration"), one of my Australian solicitors, filed contemporaneously with the Verified Petition, which sets out in further detail the duties of a liquidator under Australian law.

## C.    Summary of conduct giving rise to legal claims

17.    Prior to my appointment to the Debtor, and for several decades, members of the Binetter family conducted a scheme to evade tax in Australia (the "Scheme"). The essential elements of that Scheme were as follows:

      a.    Funds were placed on deposit with an Israeli bank, or a Swiss subsidiary of an Israeli bank, that were used to secure advances to an Australian borrowing company. The existence of that deposit was not disclosed to any Australian authority.

      b.    A 'back-to-back' loan facility was established between an Australian Binetter company and the Israeli bank. Monies drawn down into Australia under that facility were recorded in the books of the Australian company as commercial loans secured only by guarantees. Payments to the bank were recorded as repayments of loan principal or as interest on those loans. Such

- 6 -

'interest' payments were reported as tax deductible expenses of the companies.

c. In fact, interest was not charged by the bank, whose exposure was wholly secured at all times by the deposit. Rather, a small fee was charged. The scheme thus amounted to a mechanism for repatriating to Australia monies (on which tax had not been paid) for use in Australian business activities and as a mechanism to avoid paying tax on the fruits of profitable enterprises in Australia.

18.     Following an audit commenced in 2006 in relation to a number of such borrowing companies, the Australian Commissioner of Taxation (the "Commissioner") determined that the loans were not *bona fide* and, between 2009 and 2011, issued amended assessments to a number of such borrowing companies, including B.C.I. Finances Pty Limited ("B.C.I."), Binqld Finances Pty Limited ("Binqld"), E.G.L. Development (Canberra) Pty Limited ("E.G.L.") and Ligon 268 Pty Limited ("Ligon 268") (collectively, the "Initial Finance Companies"). Mr. Lock and I were appointed as liquidators of the Initial Finance Companies in 2014 and 2015. Mr. Lock's and my investigations into the affairs of the Initial Finance Companies revealed that their controllers – Andrew Binetter in particular – exposed the Initial Finance Companies to significant risks. In summary, Mr. Binetter:

a. undertook to include the Initial Finance Companies in activities that required them to carry out acts prohibited by law; and

b. lodged falsified income tax returns on the Initial Finance Companies' behalf so as to include deductions for expenses that could not be substantiated by

- 7 -

company records, thereby exposing the Initial Finance Companies to liabilities to pay interest charges under Australian taxation legislation and causing them to incur tax debts which rendered them insolvent.

19.     By utilising the Initial Finance Companies for this purpose, Mr. Binetter and the Initial Finance Companies' other directors acted in breach of their statutory and fiduciary duties owed to the companies.

**D.     First substantive proceedings – Australia case number SAD5/2015**

20.     These were the first substantive proceedings brought in relation to the conduct referred to above and were filed by Mr. Lock and me in the South Australia District Registry of the Federal Court of Australia on January 14, 2015. At that time, B.C.I. was the sole applicant in the action. On June 5, 2015, Binqld, E.G.L. and Ligon 268 were added as applicants in the proceedings. The causes of action pleaded by all the applicants were the same.

21.     The respondents to the claim (the "SAD5 Respondents") were:

     a.   the Estate of Emil Binetter;

     b.   the Estate of Erwin Binetter;

     c.   Margaret Binetter;

     d.   Andrew Binetter;

     e.   Gary Binetter;

     f.   Michael Binetter;

     g.   Milgerd Nominees Pty Limited;

21-11699-mew    Doc 4    Filed 09/30/21    Entered 09/30/21 17:40:53    Main Document
Pg 9 of 19

      h.  Erma Nominees Pty Limited;

      i.  Ligon 159 Pty Limited; and

      j.  Ligon 158 Pty Limited.

22.     For the purposes of this Declaration, I do not propose to go into any detail of the various interlocutory applications and other extensive battles in which Mr. Lock and I had to engage, for example, to obtain documents to which we were lawfully entitled as Liquidators.

23.     The trial for these proceedings commenced before her Honour Justice Gleeson on August 31, 2015 and occupied nine hearing days. The final day of hearing in the trial was September 29, 2015. On November 18, 2016, Justice Gleeson delivered and published reasons for judgment in the proceedings, which were filed with this Court [Appendix to B.C.I. Petition, case no. 17-11266 (SHL), ECF dkt. 2]. Justice Gleeson's key findings can be summarised as follows:

      a.  with the exception of Margaret and Gary Binetter, each of the respondents breached their duties as directors of one or more of the Initial Finance Companies and/or was knowingly involved in such breaches;

      b.  the breaches of duty caused significant losses, being the tax liabilities resulting from the amended tax assessments; and

      c.  each of the respondents was involved in particular breaches relating to the financial and taxation dealings of one or more of the companies in different capacities and at different times. As a consequence, each caused different elements and amounts of the losses suffered by the companies.

- 9 -

24.    In relation to our success against the other SAD5 Respondents, with liability found, there remained the question of the quantum of judgment to be entered against each such respondent. Justice Gleeson heard argument from the parties on February 13 and 14, 2017, and delivered judgment and final orders in stages on December 22, 2017, and April 16, 2018. The amounts ordered to be paid by each of the respondents held to be liable to the Debtors (exclusive of certain unquantified costs, including the costs of the liquidations) ranged from approximately $11 million to $75 million (all amounts in Australian dollars).

25.    The above judgments remain undisturbed as against the Estate of Emil Binetter, Milgerd Nominees Pty Limited and Ligon 159 Pty Limited. On the basis of those judgments, Mr. Lock and I sought and obtained orders that those companies be placed in liquidation in May 2018. I am now the sole liquidator of Milgerd Nominees Pty Limited and Ligon 159 Pty Limited. Also on the basis of the judgment in SAD5, Mr. Lock and I caused B.C.I. and E.G.L. to apply successfully for letters of administration in relation to the deceased estate of Emil Binetter, in the Supreme Court of the Australian Capital Territory. I have since also been appointed as trustee of that deceased estate in an administration being conducted under Australian bankruptcy legislation. (The substance of this paragraph is for informational purposes only, as the family of Emil Binetter and their companies are not directly involved in the affairs of the Debtor.)

26.    The Appeals. Mr. Lock and I appealed against Justice Gleeson's orders to the extent they dismissed our claim against Margaret and Gary Binetter. The other SAD5 Respondents (excluding Emil, Milgerd & Ligon 159) also appealed Justice Gleeson's judgment.

27.    Both sets of appeals were heard concurrently by the Full Court of the Federal Court of Australia (the "Full Court") between August 6 and August 10, 2018. Before judgment on either appeal was delivered, a settlement agreement was reached with Margaret Binetter and other SAD5

- 10 -

Respondents. That settlement agreement (the "October 2018 Settlement") is discussed in more detail below. As a consequence of that settlement, no appeal judgment was delivered in relation to Margaret Binetter.

28.    On November 9, 2018, the Full Court delivered its judgment on the appeal insofar as it related to Gary Binetter. The Full Court dismissed that appeal.

**E.    Second substantive proceedings – Australia case number NSD1600/2015**

29.    These second proceedings related to substantially the same subject matter as the first substantive proceedings. The applicants were, as in the previous case, the Initial Finance Companies. In this case, however, the respondents were various third party entities, including the Israeli banks involved, whom Mr. Lock and I alleged had aided and abetted, or were otherwise complicit in, the actions of the respondents the subject of the first substantive proceedings.

30.    The respondents to the NSD1600 claim (the "NSD1600 Respondents") were:

    a.    Tamarama Fresh Juices Australia Pty Limited;

    b.    Ligon 237 Pty Limited;

    c.    12 Years Juice Pty Limited;

    d.    12 Years Juice Foods Pty Limited;

    e.    12 Years Juice Foods Australia Pty Limited;

    f.    12 Years Juice Franchising Systems Pty Limited;

    g.    Real Juice Pty Limited;

    h.    Winmar Investments Pty Limited;

    i.    Dunba Investments Pty Limited;

      j.   Dunmaf Investments Pty Limited;

      k.   Bank Hapoalim B.M.;

      l.   Bank Hapoalim (Switzerland) Limited; and

      m.   Israel Discount Bank Limited ("IDB").

31.     Mr. Lock and I discontinued the claim as against Bank Hapoalim B.M. and its Swiss subsidiary, Bank Hapoalim (Switzerland) Limited, in 2016. As the only claim pleaded in NSD1600 by B.C.I. was that against those banks, following that settlement Initial Finance Company B.C.I. ceased to be a plaintiff in the action.

32.     The claim by the other applicants in NSD1600 as against all of the NSD1600 Respondents except IDB was resolved by the October 2018 Settlement.

33.     The claim against IDB was ultimately resolved in January 2021 on the entry into a settlement agreement (the "IDB Settlement") discussed below.

**F.    The October 2018 Settlement**

34.     On October 5, 2018, all of the applicants and various respondents to the SAD5 and NSD1600 proceedings, and certain other entities associated with the Binetter family, signed a deed to give effect to the October 2018 Settlement.[2]

---

[2] Because the terms of the October 2018 Settlement are confidential, I discuss them in a separate supplemental declaration that I have requested be sealed by the Court, to be filed in connection with my pending motion in case no. 17-11266 (SHL) to re-open the Chapter 15 cases of the Initial Finance Companies.

35.     Following the entry into the October 2018 Settlement, Mr. Lock and I were appointed as liquidators to several other Binetter companies, including the Debtor, as discussed above.

**G.      Third substantive proceedings – Australia case number NSD711/2020**

36.     In June, 2020, the Debtor along with three other Binetter family companies (Erbin Finances Pty Ltd (In Liquidation), Rawbin Finances Pty Ltd (In Liquidation) and Marbin Finances Pty Ltd (In Liquidation)) (the four companies, together, the "GERM Companies") were assessed by the Australian Commissioner of Taxation as being liable for taxes, penalties and interest as a consequence of their involvement in the Binetters' tax evasion scheme in the aggregate amount of approximately A$50 million. The tax debt of the Debtor (and thus the quantum of its claim against IDB, before interest and costs) was approximately A$8.3 million.

37.     On June 29, 2020, Mr. Lock and I as liquidators of the GERM Companies caused them to institute proceedings against IDB seeking compensation for those losses. The cause of action pleaded against IDB in NSD711 was the same as that pleaded against IDB in NSD1600.

38.     The claim against IDB in NSD711 was resolved, along with the claim in NSD1600, in the IDB Settlement.

**H.      The IDB Settlement**

39.     The aggregate claim against IDB by the seven applicants in NSD1600 and NSD711, inclusive of costs and interest, was approximately A$200 million.

40.     In January 2021, an agreement was reached between the applicants in both actions (which were, as stated in paragraphs [29] and [37] above, Binqld, E.G.L., Ligon 268 and the GERM Companies) and IDB (and identical non-monetary terms were agreed with IDB's subsidiary, MDB, but that agreement is not presently relevant to these proceedings).

- 13 -

41.    Pursuant to that agreement IDB paid a total of A$130 million to the Liquidators and IDB has also produced voluminous documents revealing numerous facts regarding the Binetters and Binqld, E.G.L., Ligon 268 and the GERM Companies, and asset transfers, that require my investigation.  Among other things, the records reveal:

    a.    the involvement in dealings with IDB of other members of the Binetter family who have not previously been respondents to any legal action and who are not parties to any settlement agreement; and

    b.    the transfer of substantial sums from accounts operated by the Binetters with IDB to unknown recipients.

### **REQUEST FOR RELIEF**

42.    As Liquidator, I respectfully request this Court's recognition of the Debtor's Australian liquidation as a "foreign main proceeding" as that term is defined pursuant to section 1502(4) of the Bankruptcy Code.

43.    As described above and in the Meagher Declaration, I have been provided with extensive powers as a Liquidator, subject to court supervision, to investigate the Debtor's affairs, and preserve the Debtor's assets for the benefit of creditors of the Debtor.

44.    I have been advised by my counsel in the United States that Chapter 15 of the Bankruptcy Code exists, *inter alia*, to assist foreign representatives such as me in the performance of my duties and interests in administering the Debtor's estate and assets in the most efficient way possible in order to maximize the value received by creditors of the Debtor.

45.    Here, relief under Chapter 15 of the Bankruptcy Code is necessary to obtain documents and information in the United States from individuals and institutions in the New York

- 14 -

area and otherwise in this judicial district to carry out my responsibilities as Liquidator, to investigate the financial dealings of the Debtor and to identify any causes of action that might be available to the Debtor.

46.    In addition, certain members of the Binetter family involved in the operations of the Debtor and with documents and/or knowledge regarding the Debtor's assets, liabilities and financial affairs, in particular Andrew Binetter and Michael Binetter, have (a) taken up permanent residence in the United States and, as to certain of such individuals, in this District, and (b) have transferred funds involved with or resulting from their tax schemes (that may represent assets of the Debtor) from or to one or more financial institutions in this district.

47.    The Debtor has assets in the United States in the form of, at a minimum, a retainer of $1,250 in the trust account of the Liquidator's counsel in this case, Nixon Peabody LLP.  A copy of the wire transfer confirmation is attached to this Declaration as Exhibit B.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29th day of September 2021.

_____
John Sheahan

## **EXHIBIT A**

## **ASIC Certificate of Registration – John Sheahan**





# Certificate of Registration as a Liquidator
# Corporations Act 2001

Registered Number: 5735

## JOHN SHEAHAN

is registered as a Liquidator under section 20-30(1) of Schedule 2 - Insolvency Practice
Schedule (Corporations) of the Corporations Act 2001

Date of First Registration: 17 January 1985

Period of Registration: 17 January 2021 to 16 January 2024.

Issued by the
Australian Securities and Investments Commission
on this third day of December 2020.

CERTIFICATE

**<u>EXHIBIT B</u>**

**<u>Copies of Wire Transfers</u>**

**Christmas, Robert**

---

| | |
|---|---|
| **From:** | JPMorgan Access Alerts <jpmorganaccessalerts@jpmorgan.com> |
| **Sent:** | Tuesday, September 28, 2021 9:15 AM |
| **To:** | Lewis, Lesria |
| **Subject:** | Completed Payment  Notification |

[EXTERNAL E-MAIL]

**Your completed payment notification XXXXXX9420**

| | |
|---|---|
| Method: | CHIPS CREDIT |
| Payment Type: | Confirmed Credit |
| Amount: | 1250.00 USD |
| Account#: | XXXXXX9420 |
| Date: | 2021-09-28 |
| Received From: | CITIBANK N.A. 388 GREENWICH STREET NEW YORK NY US |
| Ultimate Beneficiary: | N/A |
| B/O Customer: | GEROBIN FINANCES PTY LTD (IN LIQUIDLEVEL 8 26 FLINDERS STREET 5000 ADELAIDE SA AUSTRALIA |
| Sending Bank: | NATIONAL AUSTRALIA BANK LIMITED 383 KING STREET FLOOR 4 MELBOURNE AUSTRALIA 3001 AU |
| Acct Party: | N/A |
| JPM Reference #: | 0737700271FC |
| Client Reference #: | O/B CITIBANK NYC |
| Confirmation #: | 334701 |
| Remarks: | CHAPTER 15 APPLICATION - SLP DEBIT REF S0612710A9E501 |

This alert was sent according to your settings. To update your settings, log on to J.P. Morgan Access®. This is a system generated message. Please do not reply to this email address.

Thank you,

J.P. Morgan Treasury Services"

**Important Reminder:** J.P. Morgan will never send emails that require you to send account or personal information to us via public email or pop-up windows.

View additional information on practices used by J.P. Morgan and how to safeguard your online activity at: jpmorgan.com/info/jpmcpractices.

© 2019 JPMorgan Chase & Co. All Rights Reserved. JPMorgan Chase Bank, N.A. Member FDIC. All services are subject to applicable laws and regulations and service terms. Not all products and services are available in all geographic areas. Eligibility for particular products and services is subject to final determination by J.P. Morgan and or its affiliates.

This transmission may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If you are not the intended recipient, please delete this message and you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED.

Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use.